IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$42,783.00 IN UNITED STATES CURRENCY,<br><br>Defendant. | Civil No. 8:15CV201<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

**Nature of the Action**

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

**The Defendant *In Rem***

2. The Defendant property consists of $42,783.00 in United States currency seized from Matthew J. Gilmore, Joseph Smith and Nicholas Mason on May 30, 2014, during a traffic stop on westbound Interstate 80 near mile marker 393 in Lincoln, Nebraska. It is presently in the custody of the U.S Customs and Border Protection.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

**Basis for the Forfeiture**

6. The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

**Facts**

7. On May 30, 2014, at approximately 11:40 am, Lancaster County, Nebraska Sheriff's Office Deputy Jason Henkel saw a black 2014 Dodge Caravan travelling westbound on Interstate 80 in Lancaster County, Nebraska following other vehicles too closely. The deputy activated his overhead emergency lights and conducted a traffic stop at MM 393 on Interstate 80. As the vehicle was pulling over, Deputy Henkel saw the front seat passenger immediately light a cigarette. As he walked up to the vehicle, he saw a third party in the back third row seat sit up. Deputy Henkel approached the passenger side of the vehicle and made contact with the driver, asking for his driver's license, registration and proof of insurance.

8. Deputy Henkel noted the odor of burnt marijuana coming from within the vehicle. He asked the driver to step out of the vehicle and come back to the patrol car so he could issue the warning citation for the traffic infraction. The driver, later identified by his Ohio driver's license as Matthew Gilmore, exited the front driver's seat and walked to the rear of the van. Deputy Henkel; noticed marijuana residue on his shirt. Gilmore said he did not have any weapons on his person. He consented to a search of his person.

9. Deputy Henkel and Gilmore said in the front seat of the patrol car. Deputy Henkel asked Gilmore where they were headed. He said "Cali", referring to California. Deputy Henkel asked Gilmore about the marijuana on his shirt; he said it was probably from last night when he had smoked. Gilmore stated they had been on the road since 9 o'clock on the previous evening and admitted to smoking marijuana before he had left. Deputy Henkel asked Gilmore why he was going out to California. He said he was going there to "kick it", to visit and have a good time. He was going to be out there approximately a week; he said they had to be back by next week to get back to work. Gilmore said he was a barber and owned a barbershop back in Ohio.

10. Gilmore was extremely nervous while conversing with Deputy Henkel. Because of that, he asked for another patrol unit to come to his location. Deputy Henkel asked Gilmore if he had anything illegal in the vehicle, such as marijuana, methamphetamine, cocaine or heroin. He said "no sir" to each question. Deputy Henkel asked him if he had any large quantities of US currency in the vehicle. He paused for a second, then said had a couple of thousand dollars. He then said he had found a car out in California so he was going out there to look at it. Deputy Henkel then asked if it was just $2,000 in the vehicle. Gilmore said no, the BMW cost around

$30,000 so he has approximately $30,000 in the vehicle. Deputy Henkel asked if he had more than that; he said he did not. Deputy Henkel then asked Gilmore to be totally honest, because due to his level of nervousness and the marijuana found on his shirt, Deputy Henkel I Gilmore was going to California to purchase marijuana. Gilmore said no, he was just going out there to purchase one or two cars.

11. Deputy Henkel asked if any of the other occupants had any currency in the vehicle. Gilmore said they had money, but he did not know how much. Gilmore said he was going out there to purchase a couple of vehicles so he could turn around and flip them to make a little bit of money.

12. Deputy Henkel explained the reason for the traffic stop. Gilmore said he had his cruise control set and he was just maintaining with the flow of traffic. He asked if he was getting a ticket for the infraction; the deputy said he would only get a warning. Deputy Henkel asked for consent to search of the vehicle. Gilmore stated, "Yes sir".

13. Deputy Henkel asked where exactly in California Gilmore was headed; he said Sacramento. Deputy Henkel asked Gilmore if he knew what the address was in Sacramento. He said he wasn't sure, but thought it was near Lincoln.

14. Lancaster County Sheriff's Office Deputy Hansen arrived at the traffic stop. Deputy Henkel asked Gilmore if there were any weapons in the vehicle; he said there were not. Gilmore said his money was in a suitcase.

15. Deputy Henkel walked up to the front passenger side of the vehicle and asked the front passenger, Joseph Smith, to put his cigarette out and exit the vehicle. Smith said he had nothing on his person. Deputy Henkel saw a large quantity of US currency, rubber-banded

together and folded in half, in his front sweatpants pocket. Deputy Henkel took the currency out of his pocket and placed it up on the front passenger seat. Deputy Henkel asked Smith how much was there; he said approximately $8,000.

16. Deputy Henkel asked the male seated in the third row seat, later identified as Nicholas Mason, if he had anything on his person. Deputy Henkel asked him where they were headed; he said they were going to California for vacation. He said the other men in the vehicle mentioned they were possibly going to buy some cars out there. Mason said he was going out to visit an old girlfriend who lived in the San Francisco area. Deputy Henkel said he believed they were going out to California to purchase marijuana; Mason responded he was just a driver.

17. Deputy Henkel and Deputy Hansen began searching the vehicle. There was a red suitcase and a black suitcase in the rear hatchback. Deputy Henkel searched the black suitcase. It held only two changes of clothes. Deputy Henkel turned to the red suitcase, which Gilmore said was his, and began searching it. Deputy Henkel noted the odor of marijuana coming from the bag. In the suitcase, he found a pair of jeans which has bundles of US currency hidden in them. He also found two bank envelopes which had currency in them. The deputies smelled the odors of both burnt and raw marijuana coming from within the vehicle,

18. In the third row seat, on the floorboard, Deputy Henkel noticed a black backpack in the area where Mason had been sitting. Deputy Henkel found a large quantity of US currency in one of the compartments in the top of the backpack. There were several packs of cigarettes and a cell phone in the armrest. One of the cigarette packs had pills in them. As Deputy Henkel was searching the stow-n-go area, he noticed a GPS unit was now on the floorboard between the

second row seats and the front seats; it was unplugged and not running. At the beginning of the traffic stop, Deputy Henkel noticed the GPS was sitting on the center console and was running.

19. There were several cellphones in the center console and one in the side door. There was also a wallet belonging to Mr. Gilmore in the center console; it contained more US currency and an Arizona medical marijuana card. There were two cans of air freshener under the dash area.

20. Deputy Henkel walked back to his patrol car and advised Gilmore of his *Miranda* rights. He said he understood them and agreed to speak to the deputy. Gi1more asked what was going on. Deputy Henkel said he did not believe their story; he said he thought it was rehearsed. Deputy Henkel said they were not going out to California to buy a car; rather, they were going out there to buy marijuana. The reasons for the trip changed on a continuous basis, how the money was packaged, the overwhelming odor of marijuana in the car. Based on his training and experience, Deputy Henkel believed these three men were in possession of money that was either drug proceeds or money that was intended to be used to buy marijuana. Gilmore responded by saying he had had a couple friends in the vehicle last night and they had smoked some marijuana. They left the night before about 9, he drove for several hours and then he went to sleep. They stopped and gassed up and he began driving this morning. Deputy Henkel told Gilmore he did not believe they were going for a week's vacation when his friends only have two pairs of clothes. Gilmore then changed the story again, saying they were going to go out there for a week total, meaning leaving and returning all in the same week. Gilmore then changed the story again, saying he was going to California to possibly buy 3 BMW's to then turn around and sell them to make money.

21. Lancaster County Sheriff's Office conducted a discretionary sniff on the seized currency. A drug detector canine indicated to the odor of controlled substance emitting from the location where the seized currency was hidden. The seized currency totalled $42,783.00; it is the Defendant property in this case.

**Claim for Relief**

WHEREFORE, the Plaintiff, United States of America, prays that the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

DEBORAH R. GILG
United States Attorney

By: [signature]

NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

VERIFICATION

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA
Assistant U.S. Attorney

Subscribed and sworn to before me this 5th day of June, 2015.




Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney